(C. D. 114)

AMERICAN EXPRESS CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 3, 1939)

*Pickrell & McDonald* (*Daniel P. McDonald* of counsel) for the plaintiff.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are suits against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on particular importations consisting of metal frames for film packs and sensitized photo paper. Duty was levied on the metal frames at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for, and on the sensitized photo paper at the rate of 35 per centum ad valorem under paragraph 1413 of said act as manufactures of paper not specially provided for. All of said merchandise is claimed to be properly dutiable at the rate of 20 per centum ad valorem under paragraph 1551 of said act as parts of photographic cameras.

A representative sample of one of the knocked-down metal frames was admitted in evidence as Collective Illustrative Exhibit A, and a representative sample of the imported sensitized paper was admitted in evidence as Collective Illustrative Exhibit B. In addition to said exhibits the plaintiff offered in evidence the testimony of two witnesses.

The first, L. C. Bowen, United States examiner at the port of New York, at the request of counsel and with permission of the court, marked with the letter "A" and the witness' initials the items on the invoices which represented articles similar to Collective Illustrative Exhibit A.

On cross-examination he testified that the metal frames are imported in a knocked-down condition; that he had passed on complete film packs years ago and had advisorily classified them as photographic films; and that he had never passed them as parts of cameras.

On redirect examination he testified that, during the fifteen years that he was passing film packs, he had no occasion to examine the

paper separators, such as Collective Illustrative Exhibit B, because so far as he knew they were not imported at that time; that he had passed upon film packs but that the instant merchandise consisted of parts of film packs; that the film papers which he had passed on before, similar to Collective Illustrative Exhibit B, are parts of the pack itself; and that the metal pieces constituting Collective Illustrative Exhibit A are finished and ready to go into the film pack of the camera.

On recross-examination he testified that it was necessary to put the paper in the film to make a complete film pack; that Collective Illustrative Exhibit A is only part of a film pack; that the metal part, paper, cardboard, and film are all necessary to make a complete film pack; that each sheet of paper is pulled out of the film pack half way and torn off, which automatically places the next film in position for exposure; that the assembled metal frames (Collective Illustrative Exhibit A) serve no function in the taking of the picture; that they merely contain the film; that when the picture is taken with the film pack the latter is removed for the purpose of development, and that the frame is then thrown away.

On redirect examination he testified that when a cellulose film is used it is customary to use a metal container like Collective Illustrative Exhibit A, but that it is not necessary, since a plate holder could be used as a substitute.

The second witness, Hamilton C. Eastman, testified that he was the same person who testified before this court on March 8, 1937, in the matter of protest 825438–G; that the merchandise involved in that case consisted of metal parts for film packs and that it was the same as to size as that involved in the instant case. It appearing upon inquiry by the court that the plaintiff was the same and the merchandise similar, the record in the case of protest 825438–G, T. D. 49321, was incorporated herein.

The witness then testified that, in order to take a picture with a camera using film packs or plates, it was necessary to use a metal container like Collective Illustrative Exhibit A; that strips of paper similar to Collective Illustrative Exhibit B are used in the metal container of the film pack with the actual pieces of film; that when the strips of paper are inside the film pack they are folded so that only the tab is on the outside of the metal container; that after the picture is taken the tab is pulled out half way and the other half is torn off and discarded leaving the inner half of the strip still inside of the pack with the film attached to it; that the said operation brings another film into position in the camera; and that there is no other use to which the strips of paper similar to Collective Illustrative Exhibit A can be employed.

On cross-examination the witness testified that a glass plate could be used in place of the film pack; that the common use of the word

"film pack" includes the film, paper, and the metal container; that the function of the metal frame is to hold the film; that after the pictures are taken with the film pack the metal frame is thrown away; that the film pack is not a photographic film but is a combination of the film and the container; that the film pack adaptor is necessary for the operation of the camera; that when a camera is purchased a film pack adaptor goes with it but a film pack does not.

On redirect examination he testified that the metal frame and paper constitute the complete film pack and that the latter is a part of the camera.

Upon this record counsel for the Government contends that the merchandise herein cannot be considered as parts of cameras and cites the case of *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. 322, T. D. 46851, to the effect that, in order to be a part of something, an article must be an indispensable part. The same contention was raised in the incorporated case (*American Express Co.* v. *United States*, 73 Treas. Dec. 19, T. D. 49321), and the same authorities cited. In that case we said:

From this record it appears that there are two types of hand cameras. One type uses glass plates or films cut to the size of the glass plate, and the other type, which is by far the more popular, uses films in rolls. The merchandise in the instant case is used in the first type of camera, which employs either glass plates or film packs. Where a glass plate is used it is necessary to use a plate holder in order to protect the glass plate from improper exposure to light. If, however, the film is used in such a camera, it is cut into pieces the size of the glass plate and is inserted in the film pack just as are those involved herein. In placing the film cut to size in the film pack, pieces of opaque paper are placed between the films, with protruding tabs arranged in such manner that after each exposure a new film may be brought into place by pulling out and tearing off successive tabs from one to twelve. With a camera of this type, either a glass plate with a plate holder or a film pack with a film pack adaptor must be used. Without one or the other the camera will not function as a camera.

Counsel for the Government cites the case of *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. 322, T. D. 46851, as here controlling on the ground that the film pack herein is not absolutely indispensable for the operation of the camera with which it is to be used.

Counsel for the plaintiff, however, calls attention to the fact that the United States Court of Customs and Patent Appeals in the recent case of *Steel, Inc.* v. *United States*, 24 C. C. P. A. 423, T. D. 48872, has made an exception to the strict rule of indispensability laid down in the *Willoughby* case, *supra*. In the *Steel* case the appellate court affirmed the decision of this court, holding that steel grinding balls were dutiable as parts of machines although there was testimony that hard rocks were sometimes used instead of the steel balls. In overruling the contention of the appellant that the *Willoughby* case was there controlling the court said:

The more serious of appellant's contentions is that it is optional, according to the testimony, for the user of a grinding mill to use steel balls such as are here involved or an imported hard rock, and that therefore steel balls are not indispensable to the operation of the grinding mill. We have given this matter consideration and conclude that the mere fact that two articles each serving the same purpose may be optionally used for the completion of a machine does not pre-

vent each of said articles from being a part of a machine. * * * It is sufficient to say that, in order for an article to be a part of a machine, it is not necessary that there be no substitute for such article.

In the instant case it is uncontradicted that the type of camera using film packs cannot function unless either a film pack is used or its equivalent, namely, a glass plate enclosed in a glass holder.

We therefore hold as a matter of law that the film packs here under consideration are properly dutiable at the rate of 20 per centum ad valorem under paragraph 1551 of the Tariff Act of 1930 as parts of cameras, as alleged by the plaintiff. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.

Inasmuch as we consider that case here controlling, we hold that the metal frames and the sensitized photo paper in the form imported herein are essential parts of photographic cameras and as such dutiable at the rate of 20 per centum ad valorem under said paragraph 1551, as alleged by the plaintiff. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.